# United States Court
# Middle District of Florida

Patrick D. Pearson
  plaintiff, pro se

vs

New Tampa Bay Rentals
  LLC

Ed Smelta et al
  and

Money Tree USA LLC
  Nikolay Shulgin
  Nikolay Inkin
    et al

no. 8:13-cv-00371-eak-tbm

Complaint : plaintiff seeks damages,
  violation, discrimination
  of the handicapped

USCA Title 42 § 3601 et seq
  42 § 3604 et seq
  42 § 3617 et seq.

13 FEB 20 PM 2:20

FILED

plaintiff proceeds pro se/forma pauperis

Plaintiff has Long-Term disabilities, providing
evidentiary facts - in (subsection). Defendants coersion
began immediately after plaintiff filed suit, against
defendant, According to State of Florida - Corporate
Records. Defendants are foreclosure entities.
(www.sunbiz.org). 2010, 2008 incorporation.

Under United States Senate Bill 986 at p42
Protection of Renters Act 2009.
Each successor absorbs the terms and
conditions. each transfer.

1

defendants, attempted to defraud, and extort plaintiff - for profit. Disregarding F.S.§ 83.67(1)(6)(7) harassing plaintiff through employee's, coersion

Plaintiffs health deteriorated, and required hospitalization in intensive care unit (twice) deathly ill. see Elmowitz 571 F.Supp2d at p 370

Plaintiff requests ruling, interpretation as applicable to Senate Bill, 986 at p 42. and legal demands, therefore upon defendants.

plaintiff seeks punitive damages for extreme pain and suffering of $27,000.00 and court costs.

service to defendants
US Marshals

Patrick D. Pearson
                        pro se
440 Sixth Street N 12 B
St Petersburg, Florida
                        33701-2897
(727) 265-6748


Patrick D Pearson
        pro se                    20 February 2013


II

United States Senate Bill 986 at pg 42
section.   2009

"(E) RESTRICTION ON PUBLIC DISCLOSURE.—

"(i) IN GENERAL.—The Comptroller General may not publicly disclose proprietary or trade secret information obtained under this section.

"(ii) EXCEPTION FOR CONGRESSIONAL COMMITTEES.—This subparagraph does not limit disclosures to congressional committees or members thereof having jurisdiction over a private or public entity referred to under subparagraph (C).

"(iii) RULE OF CONSTRUCTION.—Nothing in this section shall be construed to alter or amend the prohibitions against the disclosure of trade secrets or other information prohibited by section 1905 of title 18, United States Code, section 714(c) of title 31, United States Code, or other applicable provisions of law.".

# TITLE VII—PROTECTING TENANTS AT FORECLOSURE ACT

## SEC. 701. SHORT TITLE.

This title may be cited as the "Protecting Tenants at Foreclosure Act of 2009".

## SEC. 702. EFFECT OF FORECLOSURE ON PREEXISTING TENANCY.

(a) IN GENERAL.—In the case of any foreclosure on a federally-related mortgage loan or on any dwelling or residential real property after the date of enactment of this title, any immediate successor in interest in such property pursuant to the foreclosure shall assume such interest subject to—

(1) the provision, by such successor in interest of a notice to vacate to any bona fide tenant at least 90 days before the effective date of such notice; and

(2) the rights of any bona fide tenant, as of the date of such notice of foreclosure—

(A) under any bona fide lease entered into before the notice of

**Nedco Property Management LLC.**
**P.O Box 629 Saint Petersburg Fl, 33731**
**(727)320-5858**

Patrick D. Pearson ID#6-2-5-664-55-310-0

440 Sixth Street N-12B City ST Pete Zip 33701

_____ ID#___-___-___-___-___

_____ City_____ Zip_____

of adults 1  Number of children____  Number of pets____

(   )   -   Work#(   )   -   Emergency contact#(   )   -

### - Check out time is 12:00 Noon
### Maid service is available at additional charge

ting this agreement I fully understand that facility is not my legal residents and is run and
d as Hotel/Motel license. I agree to move my belongings out if I cannot pay the rent for the
am due. I may be refused admission or ejected at anytime without refund if the management or
deems me undesirable to stay on the premises.

ess or distribute controlled substance(DRUGS)
dicated/Profanity or lewd conduct
urb the peace in anyway around any other guests
to make payment at the agreed time and or agreed rental rate
to check out by the agreed check out date

### NO REFUNDS and a 10% LATE FEE

Patrick D Pearson
_____          _____
Signature                        Signature

10/15/08                         ___/___/___
Date                             Date

m#12B Rate 470 Weekly/Monthly Check in:10/15/08 Check out:___/___/___
utilities included



6

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PINELLAS COUNTY, FLORIDA
CIVIL DIVISION

**STEARNS BANK NATIONAL ASSOCIATION,**
as successor to First State Bank by asset acquisition
from the Federal Deposit Insurance Corporation as
receiver for First State Bank,

      Plaintiff,

v.

**HIGHEST OCEANS L.L.C.,** a Florida
corporation, a/k/a THE HIGHEST OCEANS, LLC,
**SAMI Z. ANANI,** an individual, **CHARLES
RUTENBERG REALTY, INC.,** a Florida
corporation, a/k/a CHARLES RUTTENBERG
REALTY, INC. f/u/b/o DENNIS TONGE and
**UNKNOWN TENANT(S),**

      Defendants.

_____/

Case No. 11-11693CI  019
5220IICAD11693XXCICI



## COMPLAINT FOR COMMERCIAL FORECLOSURE AND OTHER RELIEF

Plaintiff, Stearns Bank National Association ("**Stearns Bank**"), as successor to First

State Bank by asset acquisition from the Federal Deposit Insurance Corporation (the "**FDIC**") as

receiver for First State Bank, sues Defendants, HIGHEST OCEANS L.L.C., a Florida

corporation, a/k/a THE HIGHEST OCEANS, LLC ("**Highest Oceans**"), SAMI Z. ANANI, an

individual ("**Anani**"), CHARLES RUTENBERG REALTY, INC., a Florida corporation, a/k/a

CHARLES RUTTENBERG REALTY, INC., f/u/b/o DENNIS TONGE, ("**Rutenberg**") and

Unknown Tenant(s), and alleges the following:

10.     The Note is secured by a Mortgage (the "**Mortgage**") encumbering the Property. The Mortgage was recorded in Official Records Book 15948, Pages 1655-1664, of the Public Records of Pinellas County, Florida.  A true and correct copy of the Mortgage is attached as **Exhibit C.**

11.     As additional security for the Loan, Highest Oceans executed an Assignment of Rents in favor of First State Bank (the "**Assignment of Rents**").  A true and correct copy of the Assignment of Rents, recorded in Official Records Book 15948, Pages 1665-1671, of the Public Records of Pinellas County, Florida, is attached as **Exhibit D.**

12.     On August 22, 2007, contemporaneous with the execution of the Note and Mortgage, Anani executed and delivered to First State Bank a Commercial Guaranty ("**Guaranty**").  Pursuant to the Guaranty, Anani guaranteed Highest Oceans' obligations under the Note and Mortgage.  A true and correct copy of the Guaranty is attached as **Exhibit E.**

13.     The Note, the Mortgage, the Assignment of Rents, the Guaranty, and any other document that evidences or secures the Loan shall be collectively referred to herein as the "**Loan Documents.**"

14.     On or about August 7, 2009, the Florida Office of Financial Regulation closed First State Bank and appointed the FDIC as its receiver.

15.     The FDIC subsequently assigned the Loan Documents to Stearns Bank by an Assignment of Mortgage dated April 8, 2010, which was recorded on April 28, 2010, in Official Records Book 16898, Page 414, of the public records of Pinellas County, Florida (the "**Assignment of Mortgage**"), Assignment and Bill of Sale, and Allonge to Note.  True and correct copies of the Assignment of Mortgage and Assignment and Bill of Sale are attached as **Exhibits F** and **G**, respectively.  The Allonge to Note is attached to the Note (Exhibit B hereto).

-3-

*... 11693 - CSC*

## IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
## IN AND FOR PINELLAS COUNTY, FLORIDA

STEARNS BANK NATIONAL
ASSOCIATION, as successor to First State Bank
by asset acquisition from the Federal Deposit
Insurance Corporation as receiver for First State
Bank,

      Plaintiff,

v.                               Case No. 11-11693-CI-19

HIGHEST OCEANS L.L.C., a Florida
corporation, a/k/a THE HIGHEST OCEANS,
LLC, SAMI Z. ANANI, an individual,
CHARLES RUTENBERG REALTY, INC., a
Florida corporation, a/k/a CHARLES
RUTTENBERG REALTY, INC. f/u/b/o DENNIS
TONGE and UNKNOWN TENANT(S),

      Defendants.

_____/

## AMENDED UNIFORM FINAL JUDGMENT OF FORECLOSURE

    **THIS MATTER** came before the Court on the parties' stipulation to a final judgment of foreclosure. After consideration of all evidence presented, this Court rules as follows:

**IT IS ADJUDGED** that:

1.    If applicable, Plaintiff has submitted a Certificate of Compliance with Foreclosure Procedures in compliance with Administrative Order 2010-025 PA/PI-CIR, Administrative Order 2012-002, or any subsequent Administrative Order.

2.    VALUE OF CLAIM: At the initiation of this action, in accordance with section 28.241(1)(a)2.b., Florida Statutes (effective for actions filed on and after June 1, 2009), Plaintiff estimated the amount in controversy of the claim to be $651,531.91. In accordance with section 28.241(1)(a)2.c., Florida Statutes, the Court identifies the actual value of the claim to be $845,495.41, as set forth below, plus $446.25 in per diem interest from June 12, 2012, through the day of judgment. For any difference between the estimated amount in controversy and the actual value of the claim that requires the filing fee to be adjusted, the Clerk shall adjust the filing fee. In determining whether the filing fee needs to be adjusted, the following graduated filing fee scale in section 28.241(1)(a)2.d., Florida Statutes, controls:

| | |
|---|---|
| $400 | Value of claim less than or equal to $50,000 with 5 defendants or less |
| $905 | Value of claim greater than $50,000 but less than $250,000 with 5 |

QB\17192517.1

|  | defendants or less |
|---|---|
| $1,905 | Value of claim $250,000 or greater with 5 defendants or less |

If an excess filing fee was paid, the Clerk shall provide a refund of the excess fee. If an additional filing fee is owed, the Plaintiff shall pay the additional fee at least 24 hours prior to the judicial sale. If any additional filing fee owed is not paid prior to the judicial sale, the Clerk shall cancel the judicial sale without further order of the Court.

3.    The following amounts are due and owed to the Plaintiff:

| Principal due on the note secured by the mortgage foreclosed: | $651,531.91 |
|---|---|
| Interest on the note and mortgage through August 22, 2011 | $3,040.48 |
| Default interest from August 23, 2011, to June 11, 2012 | $131,645.14 |
| Per diem interest at $446.25 from June 12, 2012 to judgment | TBD |
| Late charges | $8,748.14 |
| Escrow advances | $0.00 |
| Title search and UCC expenses | $429.43 |
| Taxes for the year(s) of 2009 | $19,196.81 |
| Insurance premiums | $801.00 |
| Court costs: | $2,732.50 |
| Publication | $0.00 |
|  |  |
| SUBTOTAL | $818,125.41 |
| Additional costs - appraisal fees, environmental fees, UPS fees | $2,000.00 |
|  |  |
|  |  |
| SUBTOTAL | $820,125.41 |
| Attorney's Fees based upon 88.7 hours at $295.00 per hour | $25,370.00 |
| Less: Undisbursed trust funds | $0.00 |
| Less: Unearned insurance premiums | $0.00 |
| Less: Miscellaneous deductions or credits | $0.00 |
|  |  |
| SUBTOTAL | $845,495.41* |
|  |  |
| *This amount will increase based on the day of judgment and the addition of per diem interest from June 12, 2012, through the day of judgment. |  |

4.    The total sum in paragraph 3 will bear interest at the prevailing statutory interest rate of 4.75 percent per year from this date through December 31 of this current year. Thereafter, on January 1 of each succeeding year until the judgment is paid, the interest rate will adjust in accordance with section 55.03, Florida Statutes.

5.    Plaintiff, whose address is 7555 Dr. MLK Jr. St. N, St. Petersburg, Florida, 33702, holds a lien for the total sum specified in paragraph 3 herein. The lien of the Plaintiff is superior in dignity to all rights, titles, interests, or claims of the Defendant(s) and all persons, corporations, or other entities claiming by, through, or under the Defendant(s), or any of them and the property will be sold free and clear of all claims of the Defendant(s), with the exception of any assessments that are superior pursuant to sections 718.116 and 720.3085, Florida Statutes, or N/A (describe other surviving lien). The Plaintiff's lien encumbers the subject real property located in Pinellas County, Florida, and described as:

> Lot "H" and "I", of CROUSE'S SUBDIVISION, as per plat thereof filed in the office of the Clerk of the Circuit Court in Plat Book 3, Page 22, of the Public Records of Pinellas County, Florida.

> Less the rights of access, egress, ingress, light, air and view taken by the Division of Administration, State of Florida, Department of Transportation, Northerly of Lots "H" and "I", Crouse's Subdivision, Plat Book 3, Page 22, Public Records of Pinellas County, Florida, along a line Northerly of the North line of said lots; said line running Easterly and Westerly and described as follows:

> Commence at the NE corner of Lot 7, H.W. Plunket's Subdivision in Section 19, Township 31, South, Range 17 East, as per plat thereof recorded in Plat Book 4, Page 72, Public Records of Pinellas County, Florida, run thence South 0°26'24" West 49.73 feet to begin Limited Access Line, run thence North 50°38'01" East 51.15 feet, thence North 73°49'03" East 24.11 feet; thence North 89°52'19" East 177.26 feet to end said line.

6.    If the total sum with interest at the rate described in paragraph 4 and all costs accrued subsequent to this judgment are not paid, the Clerk of Circuit Court shall sell the subject real and personal property at public sale on **September 13, 2012** (*date*) to the highest bidder for cash, except as prescribed in Paragraph 7, in the following location *(mark applicable location)*:

> ☒ In an online sale at www.pinellas.realforeclose.com, beginning at 10 a.m. on the prescribed date.

> ☐ In an online sale at www.pasco.realforeclose.com, beginning at 11 a.m. on the prescribed date (mark this box for all sales in Pasco County).

after having first given notice as required by section 45.031, Florida Statutes. Plaintiff must arrange for publication of notice of sale in accordance with chapters 45 and 702, Florida Statutes. The Plaintiff must file the original Notice of Sale and Affidavit of Proof of Publication with the Clerk no later than 24 hours prior to the sale.

    Plaintiff or Plaintiff's attorney may also cancel or reschedule the sale by filing a motion with the Court in accordance with Florida Rules of Civil Procedure, Form 1.996(b) and may seek to reschedule the sale to a later date.

7.     Plaintiff shall advance all subsequent required costs of this action. Except for publishing costs supported by an affidavit, reimbursement or credit for such costs shall be by court order based upon a written motion and adjudication at a hearing with notice. If a third party bidder is the purchaser, the third party bidder must pay the documentary stamps attached to the certificate of title in addition to the bid.

8.     If the Plaintiff incurs additional expenses subsequent to the entry of this final judgment but prior to the sale date specified in paragraph 6, Plaintiff may, by written motion served on all parties and adjudication at a hearing with notice, seek to amend this final judgment to include said additional expenses.

9.     On the filing of the Certificate of Title, the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of the Plaintiff's costs; second, documentary stamps affixed to the Certificate, unless the property is purchased by a third party bidder; third, Plaintiff's attorneys' fees; fourth, the total sum due to the Plaintiff, less the items paid, plus interest at the rate prescribed in paragraph 4 from this date to the date of the sale; and by retaining any remaining amount pending further Order of this Court.

10.     On filing of the Certificate of Sale, Defendant(s) and all persons claiming under or against Defendant(s) since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property except as provided in the **Protecting Tenants at Foreclosure Act of 2009** Pub. L. No. 111-22, 123 Stat. 1660, or as to claims or rights under chapter 718 or chapter 720, Florida Statutes, if any. On filing of the Certificate of Sale, Defendant's right of redemption as provided by section 45.0315, Florida Statutes shall be terminated.

11.     The Court finds, based upon the affidavits presented and upon inquiry of counsel for the Plaintiff, that 88.7 hours were reasonably expended by Plaintiff's counsel and that and hourly rate of $295.00 is appropriate. PLAINTIFF'S COUNSEL CERTIFIES THAT THE ATTORNEY FEE AWARDED DOES NOT EXCEED ITS CONTRACT FEE WITH PLAINTIFF. The Court finds that there are no reduction or enhancement factors for consideration by the Court pursuant to *Florida Patient's Compensation v. Rowe*, 427 So. 2d 1145 (Fla. 1985), and the Court therefore has awarded reasonable attorney's fees in the amount indicated in paragraph 3 of this Judgment.

12.     IMPORTANT INFORMATION PROVIDED pursuant to section 45.031, Florida Statutes:

IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THIS FINAL JUDGMENT.

IF YOU ARE A SUBORDINATE LIEN HOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN 60 DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.

IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT A LEGAL SERVICES OFFICE, SUCH AS: GULFCOAST LEGAL SERVICES, INC., 314 S. MISSOURI AVE., SUITE 109, CLEARWATER, FL 33756, (727) 443-0657 / COMMUNITY LAW PROGRAM, 501 FIRST AVE N., ROOM 511, ST. PETERSBURG, FL 33701, (727) 582-7480 / BAY AREA LEGAL SERVICE, INC., 2600 MARTIN LUTHER KING, JR. ST N., SUITE 401, ST. PETERSBURG, FL 33704, (727) 490-4040 / BAY AREA LEGAL SERVICE, INC., 37718 MERIDIAN AVENUE, DADE CITY, FL 33532 (352) 567-9044 / BAY AREA LEGAL SERVICE, INC., 8406 MASSACHUSETTS AVE, STE B-2, NEW PORT RICHEY, FL 34653, (727) 847-5494 TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST ANOTHER OPTION. IF YOU CHOOSE TO CONTACT ONE OF THESE SERVICES FOR ASSISTANCE, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.

13.    The Plaintiff may assign the judgment and credit bid by the filing of an assignment without further Order of the Court.

14.    Defendants Highest Oceans, LLC and Sami Z. Anani shall be jointly and severally liable for any deficiency judgment if Plaintiff establishes the amount of the deficiency. The Court retains jurisdiction of this action to enter further Orders that are proper, including without limitation, orders authorizing writs of possession and an award of attorney's fees, and to enter a deficiency judgment for any Defendants who have not been discharged in bankruptcy.

   **DONE AND ORDERED** in St. Petersburg, Pinellas County, Florida, on this __7__ day of August 2012 .

                                          _____
                                          AMY M. WILLIAMS
                                          CIRCUIT JUDGE

Copies furnished to:

Benjamin B. Brown                        Kevin J. Maller, Esq.
Christian C. Burden                      1135 Pasadena Avenue South #260
Quarles & Brady LLP                      St. Petersburg, Florida 33707
1395 Panther Lane, Suite 300
Naples, Florida 34109


                                         David Delrahim, Esq.
                                         721 1st Ave N.
                                         St Petersburg, FL 33701-3603

Sixth Circuit Administrative Order 2012-002 - Attachment H
Page 5 of 5

QB\17192517.1

Case Records Home  New Civil Search  Refine Search  Back                    Location  Pinellas County  Help

# CASE SUMMARY
## CASE NO. 12-010052-CO

PATRICK D PEARSON Vs. NEW TAMPA BAY RENTALS LLC, et al

| | |
|---|---|
| Case Type: | **OTHER CIVIL - COUNTY** |
| Date Filed: | **10/31/2012** |
| Location: | **Section 40** |
| Judicial Officer: | **JAGGER, EDWIN** |
| UNIFORM CASE NUMBER: | **522012CC010052XXCOCO** |

## PARTY INFORMATION

**DEFENDANT   NEW TAMPA BAY RENTALS LLC**

2152 9TH AVE N
ST PETERSBURG, FL 33713

**Attorneys**
**CHARLES V BARRETT, III**
*Retained*
ATTORNEY AT LAW
307 S FIELDING AVE
TAMPA, FL 33606

813-250-9797(W)

**DEFENDANT   SB HOLDINGS PINELLAS LLC STEARNS BANK LLC**
2152 9TH AVE N
ST PETERSBURG, FL 33713

**PLAINTIFF     PEARSON, PATRICK D**
APT 12-B
440 SIXTH ST N
ST PETERSBURG, FL 33701

## EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 01/30/2013 | **REQUEST FOR:** *HEARING ETC BY PLTFF PRO-SE* |
| 01/28/2013 | **AMENDED COMPLAINT** *PRO SE* |
| 01/17/2013 | **PLTF/PET'S MOTION** *TO FILE AMENDED COMPLAINT PRO SE* |
| 01/03/2013 | **CERTIFICATE OF MAILING** *PLTF'S SYNOPSIS OF MOTION* Party  BARRETT, CHARLES V, III |
| 01/03/2013 | **COPY** *PARTIAL SUMMARY JUDGMENT RULE 1 510* |
| 01/02/2013 | **ATTORNEY COVER LETTER** |
| 01/02/2013 | **ORDER GRANTING** *MOTION TO DISMISS BY DEFT NEW TAMPA BAY RENTALS LLC* Vol /Book 17843, Page 6,  1 pages |
| 12/28/2012 | **CERTIFICATE OF MAILING** *PLTF'S ADDENDUM EVIDENTIARY FACTS TO MOTN CONTINUANCE ETC* Party  BARRETT, CHARLES V, III |
| 12/28/2012 | **PLTF/PET'S MOTION** *(SYNOPSIS OF) ENTERED 122612 PRO SE* |
| 12/26/2012 | **ADDENDUM** *EVIDENTIARY FACTS TO MOTION CONTINUANCE ETC PRO SE* |
| 12/19/2012 | **CERTIFICATE OF MAILING** *PLTF'S MOTN CONTINUANCE* Party  BARRETT, CHARLES V, III |
| 12/18/2012 | **PLTF/PET'S MOTION FOR CONTINUANCE** *ETC PRO SE* |
| 12/07/2012 | **NOTICE OF HEARING** *121912 2 15* |
| 12/03/2012 | **CERTIFICATE OF MAILING** *PLTF'S MOTN PARTIAL SUMM JDMT* Party  BARRETT, CHARLES V, III |
| 11/30/2012 | **PLTF/PET'S MOTION** *FOR PARTIAL SUMMARY JUDGMENT PRO SE* |
| 11/28/2012 | **MOTION DISMISS - FAIL STATE CAUSE OF ACTION** |
| 11/16/2012 | **NOTICE OF APPEARANCE** |
| 11/07/2012 | **SUMMONS - RETURNED SERVED:** *110512* Party  NEW TAMPA BAY RENTALS LLC |
| 11/07/2012 | **SUMMONS - RETURNED NOT SERVED:** Party  SB HOLDINGS PINELLAS LLC STEARNS BANK LLC |
| 11/02/2012 | **ADD CASE TO TRAKMAN** |
| 10/31/2012 | **CASE FILED** Party  NEW TAMPA BAY RENTALS LLC |

| | |
|---|---|
| | Party  SB HOLDINGS PINELLAS LLC STEARNS BANK LLC |
| 10/31/2012 | COMPLAINT |
| 10/31/2012 | CIVIL COVER SHEET |
| 10/31/2012 | APPLICATION FOR INDIGENT STATUS APPROVED |
| 10/31/2012 | COURT APPROVAL-CLK INDIGENCY DETERMINATION |
| 10/31/2012 | SUMMONS TO SHERIFF: |
| | Party  NEW TAMPA BAY RENTALS LLC |
| | Party  SB HOLDINGS PINELLAS LLC STEARNS BANK LLC |

## FINANCIAL INFORMATION

**PLAINTIFF PEARSON, PATRICK D**

| | |
|---|---:|
| Total Financial Assessment | 320.00 |
| Total Payments and Credits | 0.00 |
| **Balance Due as of 02/12/2013** | **320.00** |

# Retaliation

case filed 10/31/2012
case no. 12-10052-CO

District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. June 30, 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir.1996); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 299 (2d Cir.1992).

June 16, 2008.



Steven **ELMOWITZ**, Plaintiff,

v.

**EXECUTIVE TOWERS AT LIDO, LLC,** Shelly Knoll, Carolyn Fried, Susan Tomback, Janice Genser, Stuart Walton, and Samuel Walton, Defendants.

No. 07–CV–4537 (JS)(AKT).

United States District Court, E.D. New York.

July 22, 2008.

**Background:** Tenant brought action against owner of apartment complex, and six individuals, who were employees or members of apartment complex, alleging violations of the Fair Housing Act (FHA), the New York Human Rights Law (NYHRL), in addition to various state law claims. Defendants moved to dismiss and for leave to amend.

**Holdings:** The District Court, Seybert, J., held that:

(1) tenant stated claim under the FHA against apartment complex owner for discrimination;

(2) tenant stated claim for retaliation against apartment complex owner under the FHA;

(3) tenant stated claim against two of apartment complex owner's employees for aiding and abetting housing discrimination under the NYHRL;

(4) tenant stated a claim for trespass; but

(5) tenant failed to state claim for intentional infliction of emotional distress (IIED).

Motions granted in part and denied in part.

**1. Federal Civil Procedure ⬤=1829, 1835**

In applying flexible plausibility standard, obliging a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible, on a motion to dismiss for failure to state a claim, the district court must still accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of plaintiff. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**2. Federal Civil Procedure ⬤=1832**

Generally, consideration of extraneous material in judging the sufficiency of a complaint is at odds with the liberal pleading standard of the Federal Rules of Civil Procedure; nevertheless, the terms and effects of documents on which a plaintiff relies in drafting the complaint can also be considered when deciding a motion to dismiss. Fed.Rules Civ.Proc.Rules 8(a)(2), 12(b)(6), 28 U.S.C.A.

**3. Civil Rights ⬤=1083**

To establish a prima facie case of discrimination in the sale or rental of a dwelling due to a handicap, a plaintiff must allege that (1) he is a member of a protected class, (2) he sought and was qualified to rent or purchase the housing, (3) he was

ejected, and (4) the housing opportunity remained available to other renters or purchasers. Fair Housing Act, § 804(f), 42 U.S.C.A. § 3604(f).

### 4. Civil Rights ⚖1083

Even though typical Fair Housing Act (FHA) claims apply to those seeking to rent or purchase housing, the language of the statute prohibiting discrimination in the sale or rental of a dwelling due to a handicap is broad enough to encompass an existing tenant who is denied access to his dwelling because of a handicap. Fair Housing Act, § 804(f), 42 U.S.C.A. § 3604(f).

### 5. Civil Rights ⚖1395(3)

Tenant stated claim under the Fair Housing Act (FHA) against apartment complex owner for discrimination in the sale or rental of a dwelling due to a handicap by alleging he suffered from bipolar disorder, depression and social anxiety, that his disability impaired his ability to work, and that he had been clinically diagnosed with and received long-term disability insurance benefits on account of his mental disability, showing it was plausible that he was disabled under the FHA, and alleging that he intended to renew his lease, that he was qualified to rent the apartment, that he was not permitted to renew his lease, and that the owner intended to continue to rent the apartment to others; tenant alleged facts sufficient to establish a right to relief above the speculative level. Fair Housing Act, § 804(f), 42 U.S.C.A. § 3604(f); Fed.Rules Civ.Proc. Rules 8(a)(2), 12(b)(6), 28 U.S.C.A.

### 6. Civil Rights ⚖1085

To establish a prima facie case of retaliation under the Fair Housing Act (FHA), a plaintiff must allege that (1) he was engaged in a protected activity, (2) defendants were aware of this activity, (3) defendants took adverse action against

plaintiff, and (4) a causal connection exists between the protected activity and the adverse action. Fair Housing Act, § 818, 42 U.S.C.A. § 3617.

### 7. Civil Rights ⚖1395(3)

Tenant stated claim for retaliation against apartment complex owner under the Fair Housing Act (FHA) by alleging he was a mentally disabled individual engaged in the enjoyment of his Fair Housing rights, including filing a complaint with Housing and Urban Development (HUD) for discrimination, that shortly after the filing of his discrimination complaint, owner refused to renew his lease, that air conditioner installer reported an abundance of prescription medication bottles in the apartment, and that he told owner's employee that in light of his disability, her discriminatory acts were unlawful. Fair Housing Act, § 818, 42 U.S.C.A. § 3617; Fed.Rules Civ.Proc.Rules 8(a)(2), 12(b)(6), 28 U.S.C.A.

### 8. Civil Rights ⚖1741

Tenant made no specific allegations involving four employees or members of apartment complex regarding their participation in conduct giving rise to a discrimination claim against apartment complex owner, as required to state a claim for aiding and abetting discriminatory conduct under the New York Human Rights Law (NYHRL). N.Y.McKinney's Executive Law § 296(6); Fed.Rules Civ.Proc.Rules 8(a)(2), 12(b)(6), 28 U.S.C.A.

### 9. Civil Rights ⚖1737

Tenant stated claim against two of apartment complex owner's employees for aiding and abetting housing discrimination under the New York Human Rights Law (NYHRL) by alleging one employee contacted him about gaining access to his apartment, so that an insurance adjuster could inspect the newly installed air condi-

ceived a Notice to Cure and an Amended Notice to Cure, stating that he was in violation of the "Objectionable Conduct" clause of his lease.[3] (*Id.* ¶¶ 37, 40.) The Amended Notice also stated that if he failed to cure by August 10, 2007, his tenancy would be terminated. (*Id.* ¶ 41.) In accordance with the Amended Notice to Cure, Plaintiff claims that Defendants requested to inspect the apartment, but failed to do so at any point before or after August 10, 2007, the deadline for the cure period. (*Id.* ¶¶ 42–43.)

On or about September 9, 2007, Plaintiff filed a complaint with the United States Department of Housing and Urban Development ("HUD") pursuant to 42 U.S.C. § 3610(a), alleging discrimination on the basis of a disability. (*Id.* ¶ 52.) Plaintiff alleges that shortly thereafter, Defendants told him that they would not extend his lease upon its expiration, despite Plaintiff's previously expressed intention to exercise his option to renew the lease. (*Id.* ¶¶ 54, 61–63.)

Plaintiff allegedly suffers from "Bipolar Disorder, Depression, and Social Anxiety Disorder," which impair "his ability to work, sleep, and maintain social relationships." (*Id.* ¶ 8.) Plaintiff also claims to have been clinically diagnosed with these mental disabilities, and that as a result, he receives long-term disability insurance benefits. (*Id.* ¶ 10.) Plaintiff also contends that a report to the Defendants from the installer of the air conditioner, describing an "abundance of prescription medication bottles," "confirmed what Defendants already knew—that Plaintiff suffered from a mental disability." (*Id.* ¶¶ 28–29.) Plaintiff alleges that because of his disability, Defendants began taking steps in a "discriminatory pattern" to

force him to vacate the premises, in violation of the FHA and NYHRL. (*Id.* ¶¶ 69, 84.) Additionally, Plaintiff claims that on numerous occasions he was taunted and harassed in public and in private by Defendant Fried as a result of his disability (*Id.* ¶¶ 55–57.)

## DISCUSSION

### I. Standard Of Review Under Rule 12(b)(6)

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, — U.S. —, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The complaint must "raise [the] right to relief above the speculative level," *id.* at 1965, precluding those claims that cannot be "nudged ... across the line from conceivable to plausible," *id.* at 1974. While the complaint "does not need detailed factual allegations," the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964–65 (citations omitted).

[1] The Second Circuit has construed *Bell Atlantic* to establish "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir.2007) (emphasis in original). However, in applying this standard, the district court must still accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of Plaintiff. *See Cleveland v. Caplaw Enter.*, 448 F.3d 518, 521 (2d Cir.

---

3. Specifically, the Notice to Cure alleged that the apartment was a "serious fire hazard," and as a result of significant debris and clutter present in the unit, was "detrimental to the health and safety of you and others." (*Id.* ¶¶ 38–39.)

06); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir.2005).

[2] Additionally, as a motion to dismiss challenges only the sufficiency of the complaint, "the Court must limit its analysis to the four corners of the complaint." *Hunt v. Pritchard Indus., Inc.*, No. 07–CV–0747, 2007 WL 1933904, at *3, 2007 U.S. Dist. LEXIS 47749, at *10 (S.D.N.Y. July 3, 2007) (internal quotation marks and citation omitted). Generally, "[c]onsideration of extraneous material in judging the sufficiency of the complaint is at odds with the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2)," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir.2002). Nevertheless, the terms and effects of documents on which a plaintiff relies in drafting the complaint can also be considered when deciding a motion to dismiss.⁴ *See id.* at 153.

### Plaintiff's Claims

### Violations Of The FHA § 3604(f) & NYHRL Section 296(5)

[3, 4] The FHA makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f). To establish a prima facie case of discrimination under Section 3604(f), Plaintiff must allege that (1) he is a member of a protected class, (2) he sought and was qualified to rent or purchase the housing, (3) he was rejected, and (4) "the housing opportunity remained available to other renters or purchasers." *Mitchell v. Shane*, 350 F.3d 39,

47 (2d Cir.2003) (citing *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032, 1038 (2d Cir.1979)). Even though typical FHA claims apply to those seeking to rent or purchase housing, the "language of the statute is broad enough to encompass an existing tenant who is denied access to [his] dwelling because of a handicap." *Roffman v. Knickerbocker Plaza Assocs.*, No. 04–CV–3885, 2008 WL 919613, at *14, 2008 U.S. Dist. LEXIS 32047, at *40 (S.D.N.Y. Mar. 31, 2008).

Here, Plaintiff alleges that he is handicapped under the FHA as a result of being mentally and emotionally disabled. (Am. Compl.¶ 9, 65.) According to the FHA, a "handicap" is defined as "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h). The Department of Housing and Urban Development provides further guidance, stating that major life activities are "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 24 C.F.R. § 100.201. Additionally, in the context of a claim under the Americans with Disabilities Act, 42 U.S.C. § 12182 ("ADA"), the Supreme Court provides guidance on the "substantially limits" language in the statute; interpreting it to mean that the disability must "prevent[ ] or severely restrict[ ]" the individual in performing major life activities.⁵ *See Toyota Motor Mfg., Kentucky, Inc. v.*

⁴ Defendants submit a number of exhibits in conjunction with their motion to dismiss. However, the majority of these exhibits are inappropriate for a motion to dismiss, and would have been more appropriately filed in conjunction with a motion for summary judgment, in accordance with the rules of this Court.

5. As the language in the ADA mirrors that found in the FHA in all material respects, courts often look to the ADA for guidance in interpreting the FHA. *See Feeland v. Sisao*, No. 07–CV–3741, 2008 WL 906746, at *4 n. 4 (E.D.N.Y. Apr. 1, 2008); *Resnick v. Cent. Park W. Condo.*, No. 07–CV–1988, 2007 WL 2375750, at *2 n. 1 (S.D.N.Y. Aug. 14, 2007).

*Williams,* 534 U.S. 184, 198, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002).

[5] Examining the Amended Complaint under the standard set out by *Iqbal* and *Bell Atlantic,* it is apparent that Plaintiff has satisfied his burden of pleading. Plaintiff states that he suffers from bipolar disorder, depression, and social anxiety, all of which are mental impairments. (Am. Compl. ¶ 8.) Plaintiff also alleges that his disability has impaired his ability to work, which is a major life activity under 24 C.F.R. § 100.201. (*Id.*) Additionally, Plaintiff alleges that he "has been clinically diagnosed with and receives long-term disability insurance benefits on account of his mental disability," from which it is reasonable to infer that his disability prevents or severely restricts his ability to work. (*Id.* ¶ 10.) Thus, Plaintiff has alleged facts sufficient to show that it is plausible that he is disabled under the FHA, and as such, is a member of a protected class.

Plaintiff also sufficiently pleads the remaining elements of a prima facie case under the FHA. It is clear that Plaintiff intended to renew his lease, and undoubtedly plausible that he was qualified to rent the apartment, as he has already renewed his lease once in the past. (*Id.* ¶ 20, 62.) Similarly, it is apparent that Plaintiff was not permitted to renew his lease, and that Executive Towers, as the operator of a large apartment complex, intends to continue to rent the apartment to others. (*Id.* ¶ 63, 68.) Viewed together, in the light most favorable to Plaintiff, the Amended Complaint alleges facts sufficient to establish a right to relief "above the speculative level." *Bell Atl. Corp.,* 127 S.Ct. at 1965.

Similarly, claims of discrimination under NYHRL Section 296(5) are analyzed using the same approach as the FHA. *See Barkley v. Olympia Mortgage Co.,* No. 04–CV–875, 2007 WL 2437810, at *18, 2007 U.S. Dist. LEXIS 61940, at *56–57 (E.D.N.Y.

Aug. 22, 2007              .dard relevant [the NYHRL] clai.... pa...allel those applicable under the Fair Housing Act"). such, Plaintiff's claim under Section 296( is sufficiently pleaded.

### B. *Violations Of FHA Section 3617 NYHRL Section 296(7)*

[6] To establish a prima facie case retaliation under Section 3617 of the FHA Plaintiff must allege that (1) he was engaged in a protected activity, (2) Defendants were aware of this activity, (3) Defendants took adverse action against Plaintiff, and (4) a causal connection exist between the protected activity and the adverse action. *See Miller v. Bd. of Managers of Whispering Pines at Colonial Woods Condo. II,* 457 F.Supp.2d 126, 131 (E.D.N.Y.2006) (citing *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown,* 294 F.3d 35, 54 (2d Cir.2002)). "Protected activity under the FHA refers to 'action taken to protest or oppose statutorily prohibited discrimination.'" *Miller,* 457 F.Supp.2d at 131 (quoting *Cruz v. Coach Stores,* 202 F.3d 560, 566 (2d Cir. 2000)).

[7] Here, Plaintiff alleges he is a mentally disabled individual engaged in the enjoyment of his Fair Housing rights, including filing a complaint with HUD for discrimination. (Am.Compl. ¶ 52.) Shortly after Plaintiff filed the discrimination complaint with HUD, Plaintiff alleges that Executive Towers refused to renew his lease. (*Id.* ¶ 54.) Additionally, Plaintiff alleges that when the air conditioner installer reported an "abundance" of prescription medication bottles in the apartment, "it confirmed what Defendants already knew—that Plaintiff suffered from a mental disability." (Am.Compl. ¶¶ 28–29.) Further, Plaintiff claims that at one point, he told Defendant Fried that "in light of his disability, her discriminatory acts were

Article III, the test for presents a live case or thus is ripe for judicial old. The Court must (1) ness of issues for judicial ) evaluate the hardship to ithholding court consider-Laboratories v. Gardner, 149, 87 S.Ct. 1507, 18 .7).

plaintiff's case appears to enge to the imposition of pproval as discriminatory in and of itself. If this require some additional austion (i.e. the seeking of pproval or the seeking of ntiff would be without a g the necessity or validity the additional steps of ional use approval for ities.

*ReMed Recovery Care ship of Worcester*, 1998 ).Pa.1998), *citing Glad-Village of Bellwood*, 441 t. 1601, 60 L.Ed.2d 66 ich is factually analogous se, specifically stated the

state remedies is not re-a federal cause of action \. The FHA permits an on' to commence a feder-whether or not a state een filed or state reme-exhausted.

*eMed* found an injury in ng board's issuance of a letter and significantly, ntroversy would be ripe nad not applied to the · a variance or special

ed that "when evaluating fitness for judicial decision, the 'litigants are not required to make futile gestures to establish ripeness.'" *Id.* quoting *Assisted Living Associates.* Here, much like the situation in *ReMed*, plaintiffs have attempted to remedy the situation to no avail. (Contrast *Marriott Senior Living Services, Inc. v. Springfield Township*, 78 F.Supp.2d 376 (E.D.Pa.1999) where Court held case was not ripe for review where the local authority was not provided a reasonable opportunity to review plaintiff's proposal, to seek input of the public and to state the reasons for its decision).

This Court holds that plaintiff has a ripe cause of action under the FHA and there is no requirement to pursue other remedies before bringing a federal court action, because to require plaintiff to return to state court to file a request for conditional use approval or a variance would effectively leave plaintiff without a vehicle for testing the necessity of the conditional use approval process and whether that restriction constitutes a violation of the FHA. Because the issues before this Court are fit for judicial decision and the parties would undergo a great hardship were this Court to withhold consideration at this time, this Court finds that this case presents a live case or controversy under Article III and thus is ripe for judicial review.

### C. *Legal Theories under the FHA*

[4] A plaintiff may bring a claim under the FHA for unlawful discriminatory housing practices under three legal theories: disparate treatment, disparate impact and failure to reasonably accommodate. *Lapid-Laurel v. Zoning Board of Adjustment of the Township of Scotch Plains*, 284 F.3d 442, 448 (3d Cir.2002).

defendants' Ordinance and conduct have a discriminatory disparate impact on persons with disabilities, and that defendants' have failed to reasonably accommodate Sharpvisions' provision of community-based residential programming to individuals with disabilities. In addition to defendants' primary argument that plaintiff's claims are not ripe for judicial review (addressed hereinabove) defendants also move for summary judgment on the basis that the Ordinance is not facially discriminatory.

### 1. *Disparate Treatment*

[5–7] Plaintiff contends that the undisputed facts show that it has been subjected to disability based disparate treatment as a matter of law. Disparate treatment, under the FHA, may be shown by "demonstrating that a given legislative provision discriminates against the handicapped on its face, i.e. applies different rules to the disabled than are applied to others." *ARC of New Jersey*, 950 F.Supp. 637, 643 (D.N.J.1996). Plaintiff need not show that defendants acted with malice or discriminatory animus. Rather, plaintiff must only show that a "protected characteristic" played a role in the defendant's decision to treat [it] differently." *Community Services, Inc. v. Wind Gap Municipal Authority*, 421 F.3d 170, 177 (3d Cir.2005).

[8] After plaintiff establishes that a statute or ordinance is facially discriminatory, the burden then shifts to the defendant to justify the disparate treatment. *ARC*, 950 F.Supp. at 643. If the defendant is able to demonstrate that no less restrictive course of action could be adopted, the burden then shifts back to plaintiff to show that other action could be taken. However, if plaintiff's prima facie

*disavow treatment*

decision is two-fold, in that the District Court must: (1) evaluate the fitness of issues for judicial decision, and (2) evaluate the hardship to the parties in withholding court consideration. U.S.C.A. Const. Art. 3, § 2, cl. 1.

**4. Civil Rights ⊸1075, 1083**

A plaintiff may bring a claim under the Fair Housing Act (FHA) for unlawful discriminatory housing practices under three legal theories: disparate treatment, disparate impact, and failure to reasonably accommodate. Fair Housing Act, § 804(f)(1)(B), 42 U.S.C.A. § 3604(f)(1)(B).

**5. Civil Rights ⊸1083**

Borough subjected operator of residential home for disabled person to disparate treatment in violation of Fair Housing Act (FHA), when borough concluded that home was "group home," and thus required operator to seek special conditional use permit, even though only one resident lived in home, and home satisfied all elements of "family" home as set forth in borough ordinance, and when borough used presence of staff as proxy for disparate treatment in stating that presence of staff necessitated treating home differently from family residence. Fair Housing Act, § 804(f)(1)(B), 42 U.S.C.A. § 3604(f)(1)(B).

**6. Civil Rights ⊸1083**

Disparate treatment under the Fair Housing Act (FHA) may be shown by demonstrating that a given legislative provision discriminates against the handicapped on its face, that is, applies different rules to the disabled than are applied to others. Fair Housing Act, § 804(f)(1)(B), 42 U.S.C.A. § 3604(f)(1)(B).

**7. Civil Rights ⊸1075**

A Fair Housing Act (FHA) plaintiff alleging disparate treatment need not show that the defendants acted with malice or discriminatory animus; rather, the plaintiff must only show that a protected characteristic played a role in the defen-

dant's decision to treat it differently. Fair Housing Act, § 804(f)(1)(B), 42 U.S.C.A. § 3604(f)(1)(B).

**8. Civil Rights ⊸1403**

After a Fair Housing Act (FHA) plaintiff establishes that a statute or ordinance is facially discriminatory, the burden then shifts to the defendant to justify the disparate treatment, and, if the defendant is able to demonstrate that no less restrictive course of action could be adopted, the burden then shifts back to plaintiff to show that other action could be taken, but if the plaintiff's prima facie case is not rebutted, a violation of the FHA has been proven. Fair Housing Act, § 804(f)(1)(B), 42 U.S.C.A. § 3604(f)(1)(B).

**9. Civil Rights ⊸1083**

Borough's interpretation of its ordinance defining "family," so as exclude home for single disabled resident from definition of "single family dwelling" and to require operator of such home to acquire conditional use permit, had disparate impact on disabled, and thus violated Fair Housing Act, § 804(f)(1)(B), 42 U.S.C.A. § 3604(f)(1)(B).

**10. Civil Rights ⊸1075**

To prevail on a disparate impact claim, a Fair Housing Act (FHA) plaintiff must demonstrate that the defendants' policies have a greater adverse impact on persons with disabilities than on non-protected persons, regardless of intent. Fair Housing Act, § 804(f)(1)(B), 42 U.S.C.A. § 3604(f)(1)(B).

**11. Civil Rights ⊸1403**

Disparate impact claims under the FHA are reviewed under the framework established for disparate treatment cases under Title VII. Fair Housing Act, § 804(f)(1)(B), 42 U.S.C.A. § 3604(f)(1)(B); Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

*Disparate Treatment*
*(DOW)*

VnRDE - PRODUCTION

CAMA  Edit  Action  Detail  Navigate  Bookmarks  Plugins  Tools  Search  Help

| Field | Value |
|---|---|
| Parcel #: | 19-31-17-19758-000-0080 |
| Parcel Status: | < No Status Selected > |
| Homestead %: | 0.00% |
| Cap Base Year: | |
| Maintenance | 09/21/2012 |
| Use Code: | 0311 Apartments (10 units to 49 units) |
| Neighborhood: | 5200 AREA = 52; NEB is NULL |
| Ownership %: | 0.00% |
| Database: | PRODUCTION |

Owner Names (1) | Tenancy (1)

| # | Owner Name | M | Role | G# |
|---|---|---|---|---|
| 1 | MONEY TREE USA LLC | O | P | 1 |

Legal Lines (2)

| # | Legal Description |
|---|---|
| 1 | CROUSE'S |
| 2 | LOTS H & I |

Owner Address

Address: PO BOX 3457
Address:
City: SEMINOLE
State: FL    Zip: 33775
Country:

Site Address: 440  6TH ST N, ST PETERSBURG  33701-
Mail To:

✔ Reconcile | Blended Value | Comm Sales Comp
Summary | Taxable | Cost | Income

Primary Method 🖙 Reconcile
Maximum Cap: $0
Just Value: $665,000
Deferred: $0

Assessed (Cap) Val: $665,000
HX Exemption: $0
Widow/Diseb/Hist/St: $0
T&P/Govt/Inst/Vet Disc: $0

Base Taxable Value: $665,000

<LAUNCH BROWSER LINK>  Launch

Record 1 of 9

All Sales | Sale Detail | Account Characteristics | Appraiser Notes

| # | M | OR Book | OR Page | Date of Sale | Recorded Date | Instr | Quali | Imp. | O. | Q/DQ | Change Code | Doc Stamps | Sales Price | Grantor | Grantee | Posted By | Sales/Appraiser Note |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | 17783 | 1054 | 11/01/2012 | 11/14/2012 | DD | | ☑ | | 12 | | 3185.00 | $455,000 | SB PINELLAS HOLDINGS LLC | MONEY TREE US... | btaylor | |
| 2 | | 17748 | 0515 | 10/09/2012 | 10/12/2012 | DD | | ☑ | | 78 | | 0.70 | $100 | HIGHEST OCEANS LLC ANANI SAMI Z | SB PINELLAS HOL... | btaylor | |
| 3 | | 15948 | 1653 | 08/23/2007 | | DD | ☑ | ☑ | | | | 7000.00 | $1,000,000 | GULF WINDS HOLDINGS INC | HIGHEST OCEANS... | DM | |
| 4 | | 14033 | 0045 | 12/30/2004 | | DD | ☑ | ☑ | | | | 6594.00 | $942,000 | COLISEUM APARTMENTS INC | GULF WINDS HOL... | DM | |
| 5 | | 11519 | 0904 | 08/08/2001 | | DD | ☑ | ☑ | | | | 2403.00 | $344,000 | BEREA ENTERPRISES | COLISEUM APAR... | DM | |
| 6 | | 10373 | 0373 | 01/14/1999 | | DD | ☑ | ☑ | | | | 2800.00 | $400,000 | GERMACK WALTER J GERMACK ROSE M | BEREA ENTERPRI... | SS | |
| 7 | | 09627 | 0880 | 03/04/1997 | | DD | | ☑ | | G | | 0.70 | $100 | GERMACK WALTER J GERMACK ROSE M | GERMACK, WALT... GERMACK, ROSE ... | BJ | |
| 8 | | 06146 | 0684 | | | | ☑ | | | Q | | 0.00 | $290,000 | | | | MONTH/YEAR OF SALE 1/1986 |
| 9 | | 05468 | 0277 | | | | | | | U | | 0.00 | $165,000 | | | | MONTH/YEAR OF SALE 2/1983 |

Related Sales

| Account # | OR Book | OR Page | Date of Sale | Instr | Q/DQ | Qualified | Improved | Doc Stamps | Sales Price | Grantee | Grantor |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | $0 | | |

Maintenance Date

Account Detail [1] | Land Lines [2] | Buildings [3] | Extra Features [4] | | Notes & Rel [6] | Site & Flags [7] | Sales History [8] | Permits [9] | | Attachments [*] | GIS [-]

Logged in as "bcorbe"    Account # Order    Maintenance Mode

 **Progress Energy**

November 30, 2012

PATRICK D PEARSON
440 6TH ST N UNIT 12
ST PETERSBURG, FL.   33701

RE: Account #93685-04491

Dear PATRICK D PEARSON



decline in health
· mental
· physical


Intensive Care Unit .
(TWICE

# DISCHARGE INSTRUCTIONS

### St. Anthony's Hospital
**1200 SEVENTH AVE**
**ST PETERSBURG, FL 33705**
**(727) 825-1100**

**Name:** PEARSON, PATRICK D
14:12:50

**Current Date:** 11/27/12

**DOB:** 8/30/1955 12:00 AM          **MRN:** 708223          **FIN:** 9720792954          **GENDER:** Male

**Allergies:** Demerol HCl; epinephrine

**Admitting Physician:** Shah , Mehul B MD

**Attending Physician:** Shah , Mehul B MD

**Location:** SAH AH 5NW

BayCare Health System would like to thank you for allowing us to assist with your healthcare needs. The following includes educational information regarding your condition.

Follow any specific discharge instructions given by your physician, and the following additional information, if applicable:

 - Call your doctor if symptoms worsen, or if you have excessive bleeding, unrelieved pain, inability to pass urine or develop a fever.
 - Report unusual drainage, odor or pus, shortness of breath, weakness, dizziness, vomiting or increased swelling a a surgical site.
 - Medication given to you during your procedure can affect your performance and ability to concentrate. Therefore, avoid the following for 24 hours:
   Alcoholic beverages, unprescribed medication, driving, operating hazardous equipment/appliances or making important decisions.

 - If you are a smoker, stop smoking and avoid second hand smoke. Ask your doctor about ways to assist you to stop smoking. For more information about free classes or counseling, call 1-877-822-6669 for a program near you.

 - Heart failure/Renal patients: WEIGH YOURSELF EVERY DAY. Notify your doctor if you gain 2 or more pounds in one day or 5 or more pounds in one week. Follow Low Sodium (Low Salt) diet instructions, unless your doctor tells you otherwise.

 - If you experience a medical emergency call 911.

**Discharge Diagnosis(s):** Perforated chronic gastric ulcer; Acute generalized peritonitis

**Follow Up Instructions:**

# DISCHARGE INSTRUCTIONS

## St. Anthony's Hospital
### 1200 SEVENTH AVE
### ST PETERSBURG, FL 33705
### (727) 825-1100

**Name:** PEARSON, PATRICK D                                **Current Date:** 12/10/12
11:53:52
**DOB:** 8/30/1955 12:00 AM        **MRN:** 708223        **FIN:** 9720798140        **GENDER:** Male

**Allergies:** Demerol HCl; epinephrine

**Admitting Physician:** Reynolds , Tatiana Stepanova MD

**Attending Physician:** Reynolds , Tatiana Stepanova MD

**Location:** SAH AH PT2A

BayCare Health System would like to thank you for allowing us to assist with your healthcare needs. The following includes educational information regarding your condition.

Follow any specific discharge instructions given by your physician, and the following additional information, if applicable:

 - Call your doctor if symptoms worsen, or if you have excessive bleeding, unrelieved pain, inability to pass urine or develop a fever.
 - Report unusual drainage, odor or pus, shortness of breath, weakness, dizziness, vomiting or increased swelling at a surgical site.
 - Medication given to you during your procedure can affect your performance and ability to concentrate. Therefore, avoid the following for 24 hours:
 Alcoholic beverages, unprescribed medication, driving, operating hazardous equipment/appliances or making important decisions.

 - If you are a smoker, stop smoking and avoid second hand smoke. Ask your doctor about ways to assist you to stop smoking. For more information about free classes or counseling, call 1-877-822-6669 for a program near you.

 - Heart failure/Renal patients: WEIGH YOURSELF EVERY DAY. Notify your doctor if you gain 2 or more pounds in one day or 5 or more pounds in one week. Follow Low Sodium (Low Salt) diet instructions, unless your doctor tells you otherwise.

 - If you experience a medical emergency call 911.

**Discharge Diagnosis(s):** Intestinal obstruction 560.9

**Follow Up Instructions:**


**FLORIDA Behavioral Medicine**

| **Child, Adolescent, Adult and Geriatric Psychiatry** |
|---|
| ◆Robert M. Mayer, M.D., Ph.D.   ◆Ashok M. Patel, M.D. |
| ◆Mauro Rodriguez, M.D.   ◆Nihal Shah, M.D. |
| ◆Rachel Agustines, M.D.   ◆Mary Lowrey, M.D. |
| Paul Curtis, M.A., Administrator |

# FLORIDA BEHAVIORAL MEDICINE
## announces the opening of a second office located at

## 1210 66th St N
## St. Petersburg, FL 33710
### In the Joslin Plaza, South of 13 Ave N on 66th ST N (West Side of 66th)

## NEW PATIENT Appointments are now available with
### Dr Ashok Patel
### Dr. Rachel Agustines
### → (Dr. Nihal Shah)

## CALL 727-518-6444,

### Please say you want the St. Petersburg Office Location.



1100 Clearwater-Largo Road   ◆   Largo, FL 33770   ◆   Telephone: (727) 518-6444

Long-Term Diabilities
1985



SOCIAL SECURITY
30 MLK ST S
ST PETERSBURG FL 33701

# Social Security Administration
# Supplemental Security Income

### Notice of Change in Payment

Date:  November 25, 2012
Claim Number:  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 DI

ıl|ı·ıll|ılıı|ll|ı·ıl|ıı|ılıl|ılıılıılı|ı|ı·ıl|ıll|ıı|llllıı|ılı|lıı
025894  1 AT 0.374 0115 LTR TM4 B54 0003
   662 12S1064E19738
PATRICK DUFF PEARSON
440 6TH ST N
APT 12B
ST PETERSBURG FL 33701-2897

We are writing to tell you about changes in your Supplemental Security Income (SSI) payments.  The rest of this letter will tell you more about this change.

We explain how we figured the monthly payment amount on the worksheet(s) at the end of this letter.  The explanation shows how your income, other than any SSI payments, affects your SSI payment.  We include explanations only for months where payment amounts change.

### Information About Your SSI Payments

- The amount due you beginning January 2013 will be $190.00.

- The amount due you is being raised because the law provides for an increase in Supplemental Security Income payments in January 2013 if there was an increase in the cost-of-living during the past year.

- The amount due you as shown above is the amount we would send each month if we were not recovering an overpayment.  We will continue to withhold $20.00 each month until the overpayment of $4,619.28 remaining after January 2013 is recovered.  Your payment will be $170.00 beginning January 2013.  Please get in touch with any Social Security office if you disagree with the rate of withholding or if you prefer to make refund.



### Your Payment Is Based On These Facts

Our records show that the following income used to figure your payment has also changed—

### See Next Page

SSA-L8151

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                                                                      Page 2 of 5

11/25/2012

Your increased Social Security benefits--before any deductions for
Medicare premiums-- of $540.00. You should receive the increased
Social Security benefit about January 3, 2013. We must count the
increase in your benefits for January 2013 even though we are counting
your other income for November 2012.

## Your Reporting Responsibilities

Your SSI payments may change if your situation changes. You are required to
report any changes that may affect your SSI no later than 10 days after the
month the change takes place.

Please call 1-800-772-1213 or contact your local Social Security office to report
any of the following changes:

- you start or stop work, or your wages increase or decrease;
- your bank account balance goes over $2,000.00;
- you move;
- anyone else moves into or out of your household;
- someone in your household dies;
- you marry, separate, or divorce;
- income or resources change for you or members of your household;
- your medical condition improves;
- you leave the United States and expect to be gone for a full calendar
  month or for 30 consecutive days;
- you are in a hospital, jail, or other institution for a full calendar
  month;
- a felony warrant for flight or escape or a warrant for violating a
  condition of parole or probation is issued for your arrest.

## You Can Review The Information in Your Case

The decisions in this letter are based on the law and information in our
records. You have a right to review and get copies of the information in our
records that we used to make the decisions explained in this letter. You also
have a right to review and copy the laws, regulations, and policy statements
used in deciding your case. To do so, please contact us. Our telephone
number and address are shown under the heading "If You Have Questions".

## Things You Should Know

- You may use this letter when you need proof of your SSI payment
  amount for other assistance programs such as food stamps, rent
  subsidies, energy assistance, medical assistance, bank loans, or for other
  purposes. However, if you get another letter saying your SSI payment
  is changing again, use that letter instead.



- We may match computer records and share information with other
  Federal, State, or local government agencies. Agencies use this
  information to see if a person qualifies for benefits. The law allows us
  to use computer matching even if you do not agree.

SSA-L8151

3554

25/2012

# HOW WE FIGURED YOUR PAYMENT FOR January 2013 ON

### Your Payment Amount

| | |
|---|---|
| The most SSI money the law allows us to pay | $710.00 |
| Minus (-) "Total income we count" (see below) | <u>-520.00</u> |

**Total Monthly SSI Payment**
**for January 2013 on**                            $190.00

### Your Income Other Than Your SSI

Income you receive in November 2012 on affects your payment for January 2013 on

| | |
|---|---|
| January 2013 amount of Social Security benefits | $540.00 |
| By law we don't count $20.00 of above income | <u>- 20.00</u> |

**Total income we count**                          $520.00

SSA-L8151

6 Florida Practice Series § 15:8, Legislative Restrictions and Limitations on the Amount of Punitive Damage Awards.

6 Florida Practice Series § 15:9, Responsibility of the Court to Correct an Excessive or Inadequate Award: Remittitur and Additur.

6 Florida Practice Series § 21:6, The Collateral Source Rule.

6 Florida Practice Series § 22:2, Comparative Negligence.

6 Florida Practice Series § 15:10, Pleading Requirements and Procedure.

6 Florida Practice Series § 15:17, Types of Actions in Which Punitive Damages May be Recovered.

6 Florida Practice Series § 15:18, Breach of Contract Actions.

Trawick's Florida Practice and Procedure § 24:2, General Verdicts.

## Notes of Decisions

Comparative negligence 2
Construction and application 1

**1. Construction and application**

Where conflict arises between wrongful death statute, under which nonnegligent survivor's recovery cannot be reduced due to another survivor's negligence, and comparative fault statute, which dictates that each party's liability is limited to that party's percentage of fault, comparative fault statute must yield to wrongful death statute. Frazier v. Metropolitan Dade County, App. 3 Dist., 701 So.2d 418 (1997). Death ⊙ 91; Negligence ⊙ 549(5)

In cases involving personal injuries arising out of operation of motor vehicle, statute which requires that evidence proving amount of collateral source payments be presented to jury during trial, and that jury be instructed to deduct such amounts from its verdict, governs over separate statute which generally authorizes court to reduce jury damage award by amount of collateral source payments. Kirkland v. All-state Ins. Co., App. 1 Dist., 655 So.2d 106 (1995). Damages ⊙ 182; Damages ⊙ 214

**2. Comparative negligence**

Damages awarded to father, who had not been negligent in connection with his child's drowning, in wrongful death action could not be reduced by percentage of fault attributable to child's mother, who had survived and was party to action. Frazier v. Metropolitan Dade County, App. 3 Dist., 701 So.2d 418 (1997). Death ⊙ 91; Negligence ⊙ 549(8)

## 768.72. Pleading in civil actions; claim for punitive damages

(1) In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages. The claimant may move to amend her or his complaint to assert a claim for punitive damages as allowed by the rules of civil procedure. The rules of civil procedure shall be liberally construed so as to allow the claimant discovery of evidence which appears reasonably calculated to lead to admissible evidence on the issue of punitive damages. No discovery of financial worth shall proceed until after the pleading concerning punitive damages is permitted.

(2) A defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence. As used in this section, the term:

(a) "Intentional misconduct" means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.

(b) "Gross negligence" means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

195

itt, Lenore Carrero Nesbitt, J., of defraud-
ng and conspiring to defraud home buyers,
nd they appealed. The Court of Appeals,
Edmondson, Circuit Judge, held that reason-
ble jurors could not find that person of
rdinary prudence about to enter into agree-
nent to purchase home in Florida from hous-
ng developer would rely on developer's own
affirmative representations about value or
ental income of its homes and therefore,
'scheme to defraud" within meaning of feder-
l fraud statutes had not been proved so as
o sustain defendants' convictions.

Reversed.

**1. Criminal Law ⚖1144.13(2.1, 5), 1159.2(7)**

In general, when presented with chal-
lenge to sufficiency of the evidence, review of
the evidence is limited to determination of
whether reasonable juror could find guilt be-
yond reasonable doubt and all evidence
should be viewed in light most favorable to
the government, with all reasonable infer-
ences drawn in favor of supporting the ver-
dict.

**2. Postal Service ⚖35(20)**

No vicarious criminal liability is autho-
rized under the mail fraud statute; instead,
evidence must show that each person willful-
ly participated in the scheme. 18 U.S.C.A.
§ 1341.

**3. Fraud ⚖68**

If proof at trial fails to show a scheme to
defraud as that term is used in the federal
fraud statutes, insufficient evidence exists to
uphold conviction.

**4. Fraud ⚖68**

In determining whether sufficient evi-
dence exists to uphold conviction under fed-
eral fraud statute, court must closely analyze
the statutory language and the facts present-
ed in particular case; there are no construc-
tive offenses and before one can be punished,
it must be shown that his case is plainly
within the statute.

**5. Statutes ⚖241(1)**

"Rule of lenity" commands that, where
there are alternative readings of criminal

statute, court is to choose the harsher only
when Congress has spoken in clear and defi-
nite language.

> See publication Words and Phrases
> for other judicial constructions and def-
> initions.

**6. Fraud ⚖68**

Federal fraud statutes cannot be said to
reach only common-law fraud; although cer-
tain elements of common-law fraud need not
be shown, Congress did not strip the words
"defraud" or "false or fraudulent pretenses"
of all the meaning these words had before
the statutes were enacted.

**7. Postal Service ⚖35(12)**

"Puffing" or "sellers' talk" is not action-
able under mail fraud statute. 18 U.S.C.A.
§ 1341.

**8. Fraud ⚖68**

Under federal fraud statutes, scheme
need not be successful to be unlawful, no
person need actually be defrauded, and no
injury or damage must be proved.

**9. Postal Service ⚖49(5)**

Probative evidence of mail fraud is the
presence or absence of the traditional
"badges of fraud." 18 U.S.C.A. § 1341.

**10. Postal Service ⚖35(8)**

Mail fraud statute requires government
to prove that reasonable person would have
acted on the representations. 18 U.S.C.A.
§ 1341.

**11. Postal Service ⚖35(8)**

To prove mail fraud, government must
show that defendant intended to create
scheme reasonably calculated to deceive per-
sons of ordinary prudence and comprehen-
sion; the "person of ordinary prudence"
standard is an objective standard not directly
tied to experiences of a specific person. 18
U.S.C.A. § 1341.

**12. Fraud ⚖68**

When a relationship "fiduciary in na-
ture" exists between defendant and his in-
tended victims, federal fraud statutes are
broadly interpreted and are intended by

violating an express statutory provision. *Holzer*, 816 F.2d at 309.

With these thoughts in mind, we turn to the substantive statutes upon which these convictions are based to determine whether the evidence proved a crime was committed. The mail fraud statute prohibits devising a "scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses," which is furthered by use of the mails. 18 U.S.C. § 1341; *see also, U.S. v. Funt*, 896 F.2d 1288, 1292 (11th Cir. 1990). Title 18 U.S.C. section 2314 prohibits devising a "scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses," which induces a person to travel in interstate commerce. 18 U.S.C. § 2314; *see also, U.S. v. Biggs*, 761 F.2d 184, 187 (4th Cir.1985).

[6–9] The fraud statutes cannot be said to reach only common law fraud. *See Durland v. U.S.*, 161 U.S. 306, 312–14, 16 S.Ct. 508, 511, 40 L.Ed. 709 (1896); *U.S. v. Whitmore*, 97 F.Supp. 733, 735 (S.D.Cal.1951) ("For 'the scheme to defraud' punished by the statute is more inclusive than common law 'fraud'"). Although certain elements of common law fraud need not be shown,[12] Congress did not strip the words "defraud" or "false or fraudulent pretenses" of all the meaning these words had before the statutes were enacted. For example, "puffing" or "sellers' talk" is still not actionable under the mail fraud statute. *See U.S. v. Pearlstein*, 576 F.2d 531, 540 n. 3 (3d Cir.1978) (statements that company "nationally known" and that product "among the finest ... in the world" are "not cognizable under the federal mail fraud statute."). And, probative evidence of mail fraud is the presence or absence of the traditional "badges of fraud." *Sawyer*, 799 F.2d at 1502.

[10, 11] In addition, in this circuit, mail fraud requires the government to prove that a reasonable person would have acted on the representations. *See Pelletier v. Zweifel*, 921 F.2d 1465, 1498–99 (11th Cir.1991). To prove a crime, the government must show the de-

fendant intended to create a scheme "reasonably calculated to deceive persons of ordinary prudence and comprehension." *Id.* at 1498–99 (citing *U.S. v. Bruce*, 488 F.2d 1224, 1229 (5th Cir.1973)); *but see, U.S. v. Brien*, 617 F.2d 299, 311 (1st Cir.1980), and *U.S. v. Maxwell*, 920 F.2d 1028, 1036 (D.C.Cir.1990) (disagreeing with us and holding that mail fraud can lie even where only "most gullible" would be deceived). The "person of ordinary prudence" standard is an *objective standard* not directly tied to the experiences of a specific person or persons.

[12] In some situations, a reasonable person is always permitted to rely on the recommendations of a particular person; and, certain people must always disclose facts where nondisclosure could result in harm. This circumstance exists when there is a special relationship of trust, such as a fiduciary relationship, between people. *See Holzer*, 816 F.2d at 307. (fraud includes "the deliberate concealment of material information in a setting of fiduciary obligation."); *cf. Chiarella v. United States*, 445 U.S. 222, 228, 100 S.Ct. 1108, 1114, 63 L.Ed.2d 348 (1980) ("[o]ne who fails to disclose material information prior to the consummation of a transaction commits fraud only when under a duty to do so."); *cf. also, U.S. v. O'Malley*, 707 F.2d 1240, 1247 (11th Cir.1983) (state insurance commissioner must disclose contractual relationship). Where a relationship "fiduciary in nature" exists between a defendant and his intended victims, the federal fraud statutes are broadly interpreted and were intended by Congress to "protect the careless and the naive from lupine predators...." *U.S. v. Kreimer*, 609 F.2d 126, 131, 132 (5th Cir.1980).

[13] In this case, defendants were not in some kind of legal relationship with its customers which required defendants to disclose pricing structures under every circumstance. Instead, GDC and its customers were entering into an arm's length transaction; a transaction which was of considerable financial

---

12. For example, the scheme need not be successful to be unlawful; no person need actually be

defrauded. *Pelletier v. Zweifel*, 921 F.2d 1465,